1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN ALOTHA JOHNSON, | Case No. 1:12-CV-524-AWI-GSA |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THE COURT AFFIRM DENIAL OF BENEFITS AND ORDER JUDGMENT FOR COMMISSIONER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Susan Johnson ("Plaintiff"), by her attorney Sengthiene Bosavanh, seeks review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin. The undersigned finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards, and therefore recommends that the Court affirm the Commissioner's denial of benefits.

## I.     Facts and Prior Proceedings[1]

Plaintiff applied for benefits in March 2008, alleging disability as of January 1, 2004. Her applications were denied in July 2008 and upon reconsideration in January 2009. ALJ Sandra K.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Rogers held a hearing on May 17, 2010 and denied Plaintiff's application in a decision dated July 19, 2010.  The Appeals Council issued a decision affirming the ALJ's order, making it the final decision of the Commissioner for purposes of judicial review. AR 1-4.

### A.     Plaintiff's Background and Testimony

Plaintiff was fifty-two years of age at the hearing. AR 50. She completed three years of junior college and previously worked as a preschool teacher and instructional aide. AR 51.

Plaintiff stopped working because of back pain. AR 51-52. Her back hurts all day and she is unable to lift more than ten pounds. AR 53. She has three to four back spasms per day and has to lie down "all day" to relieve her pain. AR 54-55. She has had to use a four-point cane for the past two years to walk, and sometimes she is unable to walk more than fifteen feet without taking a break to wait for a back spasm to pass. AR 53-54. Her neck is in "constant pain." Turning her head from side to side causes pain and dizziness. AR 55-56.  She has shoulder pain daily and it hurts to lift things. AR 60.

Plaintiff has colitis which causes her to spend more than half the day in the bathroom ten days per month, once per hour the other days. AR 57-59. She has acid reflux flare-ups fifteen days per month that causes pain and burning "all day." AR 59-60, 69. She has diabetes, depression, anxiety, breathing problems, difficulty sleeping and sleep apnea, fatigue, and has had pneumonia. AR 61-64.

On a good day, she makes cookies and crochets. AR 64-65. She also shops for groceries with assistance once per month. AR 66. Her children and son-in-law perform her housework, cooking, and laundry. AR 68.

### B.     Testimony of Vocational Expert

George A. Meyers, the vocational expert ("VE") stated that Plaintiff had a work history as a preschool teacher, classified as light, skilled, SVP  seven;  and as a teacher's aide, classified as light,

semi-skilled SVP three.[2] The VE was asked to consider a hypothetical worker of Plaintiff's age, education, and work history who could only stand and walk zero to two hours, sit for zero to two hours, lift and carry fifteen pounds occasionally and ten frequently, and who could never climb, balance, stoop, kneel, crouch, crawl, or reach.  Mr. Meyers indicated that the person could not work. He also opined that a person who needed to be in bed all day, or in the bathroom all day would be unable to work.

### C.    Medical Record Evidence Relevant to Plaintiff's Back and Neck Pain[3]

During the alleged disability period, Plaintiff received treatment at Pathways Healthcare for back and neck pain from 2005 to April 2010. Her pain was treated with medication. She also received chiropractic care from John Brennan, D.C., from September 1998 to February 2006.

With regard to Plaintiff's neck pain, a cervical spine x-ray taken in September 2005, showed disc space narrowing at the C6-7 level; however, there was no compression of the nerves, and her spinal alignment and soft tissues were otherwise unremarkable. AR 275. Plaintiff complained of neck pain to her treating clinicians in October and December of 2005; she was given Tylenol and Mobic samples. She also requested Vicodin in December.  She did not complain of neck pain again until August 2006, at which point she was prescribed the pain medication Voltaren. AR 295. She reported a week later that she did not take it. AR 294.

In addition to neck pain, Plaintiff began complaining of back pain in February 2006 and was prescribed Tramadol. AR 342. Approximately one year later in January 2007, she complained of low back pain and was prescribed Flexeril, a muscle relaxant, and Voltaren. AR 289. She again complained of low back pain in March and July 2007, and was prescribed Robaxin, a muscle

---

[2]"SVP" refers to  specific vocational preparation.  This strength rating captures how much exertion the job requires and whether the exertion is occasional (up to a third of a day), frequent (two thirds), or constant. The Specific Vocational Preparation number ranks, from one to nine, how long it takes to learn the job. Dictionary of Occupational Titles (4th ed.1991) Appendix C.
[3]     The entire record was reviewed by the Court, however, only those portions relevant to the instant proceedings are briefly summarized below.  Plaintiff's argument relates only to her back and neck pain, as well as her gastrointestinal issues.  There are no arguments concerning the ALJ's findings as to Plaintiff's mental health.  Thus, the Court will only summarize the medical evidence related to Plaintiff's neck, back and gastrointestinal conditions.

relaxant, and Clinoril for pain.  In March 2007, an x-ray of her thoracic spine showed "a very slight upper thoracic scoliosis" and an x-ray of the lumbar spine showed mild degenerative changes at L3-4 and L4-5 and moderately severe degenerative changes at L5-S1. AR 264-65. Her pain medication was changed to Voltaren in June 2007 and Darvocet in July 2007. AR 281-82. Plaintiff complained of lower back spasms in August 2007, but her medications were unchanged. AR 280. She continued her medications at her appointments in September, October, November and December of 2007. AR 544-551. She did not complain of neck or back pain in September or October of 2007, described low back and joint pain on November 12, 2007, and did not describe this pain at the next four appointments in November and December 2007. *Id*.

In January 2008, Plaintiff again complained of neck and low back pain. AR 543. At that appointment, Nurse Practitioner Marc Stoner, who worked at the Pathways Clinic with Dr. Michael Schorr,[4] completed a questionnaire for the California welfare program. He stated that Plaintiff could stand/walk for up to two hours and sit for up to two hours in an eight hour workday, could occasionally lift/carry fifteen pounds and frequently or constantly lift/carry ten pounds, and could never climb, balance, stoop, kneel, crouch, crawl, or reach. AR 301-03. Nurse Stoner indicated that Plaintiff's treatment or medications would affect her ability to work, but did not provide an explanation. *Id*. Nurse Stoner did not think Plaintiff was limited in using her hands, fingers, or feet. *Id*. Plaintiff was not limited in her activities of daily living, but she was "very unmotivated" to adapt to work situations. AR 303.

After this examination, Plaintiff refilled her medications but did not complain of back or next pain again for her next seven appointments, until August 2008.  AR 532-543.   In April 2008 an abdominal CT was ordered (due to complaints of weight loss, diarrhea, and generalized abdominal

---

[4] Plaintiff incorrectly states that Nurse Stoner worked with chiropractor John Brennan and that Dr. Brennan is an M.D.

4

pain, discussed below) which showed degenerative changes of the spine, particularly at the L5-S1 level. AR 513.

On May 21, 2008, Miguel Hernandez, M.D., a Board-certified Family Practitioner, reviewed Plaintiff's medical records and performed a consultative examination. AR 434-38. Plaintiff reported that she could dress and bathe herself and perform light house work. *Id*. (In a psychiatric evaluation from the same month, Plaintiff reported that she prepared meals, drove, watched TV, gardened, had friends, took her daughter to school, and dusted the house. AR 440.) Dr. Hernandez observed that Plaintiff was in no apparent distress, did not use an assistive device, had normal coordination and gait, and had normal muscle tone and strength. AR 436. The range of motion in her neck and back was somewhat decreased.  AR 437.  Dr. Hernandez opined that Plaintiff could stand/walk and sit for six hours each in an eight hour day (without need for an assistive device), could lift/carry twenty pounds occasionally and ten pounds frequently, and should not bend, stoop, or crouch "in a repetitive manner." AR 438.

On June 16, 2008, state agency non-examining physician Lavanya Bobba, M.D., reviewed Plaintiff's treatment history and opined that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently and could stand/walk and sit for six hours each. AR 442. Further, Dr. Bobba opined that Plaintiff could occasionally climb ramps, stairs, a ladder, rope, and scaffolds and occasionally balance, stoop, kneel, crouch, crawl, and reach overhead. AR 443. Plaintiff was otherwise unlimited in manipulative, visual, and communicative tasks. AR 443-44. Dr. Bobba disagreed with Nurse Stoner's January 2008 questionnaire, explaining that Plaintiff's clinical findings and observations did not support further limitations. AR 445.

An August 1, 2008 x-ray of the lumbar spine showed scoliosis in the thoracolumbar region and moderate discogenic disease at the L5-S1 level. AR 510.  A spinal MRI was recommended.  AR 510.  In August and September 2008, Plaintiff complained of severe neck and back pain. AR 533,

528. Her medications were unchanged after her x-rays were reviewed in September, and she was referred to a chiropractor. AR 528-29. She was prescribed a cane in October 2008. AR 522.

In November 2008, a lumbar spine MRI showed good overall alignment and "very minimal degenerative changes" of the lower lumbar spine. AR 625. There were mild degenerative changes, mild disc bulging at the L3-4 and L5-S1 levels, and moderate bulging at the L4-5 level; however, the nerves were not compressed. AR 626. An MRI showed good alignment of the cervical spine and minimal narrowing at the C6-7 level. AR 629. Her medications were not changed after the MRI results were reviewed. AR 673. In an unrelated hospital procedure, a physician observed that Plaintiff had normal gait, range of motion, strength, tone, and stability. AR 598-99.

Plaintiff did not complain of pain to her primary treating clinicians in November or December 2008. AR 672-75, 598.  She was prescribed Hydrocodone, a pain medication, in January 2009. AR 670. She was also evaluated at a sleep clinic in January. She did not have any tenderness in her neck, and reported that she did not smoke. AR 645-46.

Plaintiff requested that her pain medication be increased on March 24, 2009, and she was switched to Lortab. AR 667. She did not complain of pain at her March 31st, April, or May appointments. AR 663-66. She complained of low back pain in June 2009. AR 662. She did not report any increased pain, and her pain medications were refilled, through her last treatment note in the record in May 2010. AR 649-62.

On December 2, 2009, Nurse Practitioner Ruth Pflueger (also from Pathways Clinic) reported on a Stanislaus County General Assistance questionnaire that Plaintiff had chronic abdominal pain, chronic back pain, and fatigue. AR 647. Nurse Pflueger opined that Plaintiff could "not lift or stand for any length of time" and could not work on a full or part-time basis. *Id.*

At her May 4, 2010 appointment, Plaintiff asked her doctor to fill out a questionnaire for her attorney in her disability case. AR 648. Michael Schorr, M.D., of Pathways Healthcare completed

the questionnaire. AR 688. Dr. Schorr opined that Plaintiff's medical problems did not preclude her from performing full-time work at any exertional level and that Plaintiff was not restricted to sedentary work. *Id*. He further opined that Plaintiff was not precluded from lifting twenty pounds occasionally or ten pounds frequently. *Id*. Plaintiff could sit for thirty minutes and stand/walk for twenty minutes at a time, should lie down or elevate her legs, and could not lift or bend over. *Id*. The objective findings upon which he based his opinions were "sleep tests, radiology and lab tests." *Id*.

### D.   <u>Medical Record Evidence Relevant to Plaintiff's Abdominal Pain</u>

A February 10, 2004 treatment note reflects that Plaintiff was "doing well," though gastrointestinal reflux disease (GERD) was bothering her "off and on." AR 326. She complained of vomiting in April 2005 and was prescribed Nexium for reflux. AR 323. She reported improvement from the Nexium a week later. AR 323, 345. A chest x-ray was normal. AR 559. Her medication was changed to Aciphex in December 2005 due to insurance coverage. AR 345.

In August 2006, Plaintiff complained of abdominal pain, thought to be a urinary tract infection. AR 295. She complained of vomiting and burping a week later, and she was prescribed Pepcid for reflux. AR 294. A September 2006 abdominal x-ray and ultrasound were normal. AR 266-67. She again complained of abdominal pain and heartburn in October 2006 and was prescribed additional medications. AR 293. She denied gastrointestinal ("GI") problems on November 11 and December 1, 2006. AR 291-92. Her medications were continued on December 22, 2006. AR 290.

Plaintiff reported that her abdominal pain was "better" in March 2007, and she denied GI pain in April 2007. AR 285, 287. She reported nausea, constipation, and diarrhea in June 2007. AR 284. Two days later, she denied GI problems. AR 283. A June 2007 abdominal ultrasound was normal, apart from evidence of prior gallbladder removal. AR 518. In addition, a pelvic ultrasound was normal apart from a small uterine fibroid, and a chest x-ray was normal. AR 520-21. She denied GI pain in July 2007. AR 288. A July 2007 chest CT was normal. AR 366. An October 2007 upper GI series showed a small hiatal hernia associated with free reflux. AR 526. She reported pain, nausea, and diarrhea in December 2007. AR 547-48.

In February 2008, Plaintiff was diagnosed with eosinophillic colitis, which "ceased" upon treatment with Prednisone. AR 505-06. An abdominal exam was normal at that time. AR 505-06. In April 2008, CTs of the abdomen and pelvis showed gas but no obstruction. AR 513-14. She reported abdominal pain in April 2008. AR 539-40.

During her May 2008 internal medicine consultative examination, Plaintiff reported that she had allergic colitis with intermittent diarrhea that had gotten worse over the prior six months. AR 435. On examination, her abdomen was soft and non-tender. AR 436. She did not list abdominal pain as a chief complaint in her May 2008 psychiatric evaluation. AR 439.

Also in May 2008, Plaintiff reported to her treating clinician that she lost one hundred pounds and had diarrhea over the last ten months. AR 473. Gregory Bensch, M.D., an allergist and immunologist, evaluated Plaintiff for allergies. AR 482-83. On examination, she was well nourished, in no distress, and her abdomen was soft and non-tender. AR 483. She reported she smoked a pack of cigarettes per day. AR 482. She was advised to avoid milk and given Asmanex for mild asthma. AR 438.

Plaintiff reported weight loss, pain, and constipation in June 2008. AR 538. In August 2008, a chest x-ray showed stable chronic obstructive pulmonary disease (COPD). AR 511. Also in August 2008, she reported diarrhea and was advised to avoid milk and increase fiber. AR 532, 535. In October 2008, a chest CT showed some hyperinflation of the lungs and infection. AR 627. She did not report any GI symptoms in November 2008, and her abdomen was soft and non-tender. AR 598. She denied GI pain in December 2008. AR 672, 674.

In January 2009, Plaintiff had constipation, heartburn, and abdominal pain. AR 670. In May 2009, she was given medication for GERD. AR 663. In October 2009, she had acid reflux and GI pain. She was given Prilosec. AR 660. She denied GI pain in November 2009 but complained of stomach pain on December 2, 2009. AR 658-59. A December 2009 chest CT was normal. AR 687.

In January 2010, Plaintiff complained of urinary trouble and was given antibiotics. AR 653. On March 10, 2010, she complained of left-sided abdominal pain and reported a family history of

8

kidney disease. AR 652. A week later, Plaintiff denied GI pain but complained of kidney pain. AR 651. Plaintiff denied GI pain in April and May 2010. AR 648-50. Following the hearing in this matter, Plaintiff was diagnosed with kidney disease and prescribed a water pill. AR 18.

## II.   Disability Standard

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

To make the disability determination more uniform and efficient, ALJs follow a five-step "sequential evaluation process," stopping once they reach a dispositive finding. 20 C.F.R. §§ 404.1520, 1594(b)(5).  The sequential process begins with a "*de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996). At steps one and two, the ALJ confirms that the claimant is not meaningfully employed and in fact has severe impairments. Once a claimant passes this screening, the remaining steps examine whether she is disabled.  A claimant may prove this in two ways. One way—considered at step three—is to have a condition that is disabling by definition. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1 (the "listings"). Failing this, a person must present evidence of a residual functional capacity ("RFC"), which captures the most an individual can do despite any limitations.  The ALJ determines a claimant's RFC, then at steps four and five applies this to the world of work.  If the RFC forecloses past work, and if the Commissioner

cannot identify a significant number of other available jobs, then a finding of disability is established.

### III.   The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 33.  More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2004. AR 33. Further, the ALJ identified degenerative disc disease, colitis and irritable bowel syndrome as severe impairments.  AR 33.  Nonetheless, the ALJ determined Plaintiff's impairment did not meet or exceed any of the listed impairments.  AR 34.

Based on her review of the entire record, the ALJ determined that Plaintiff has the RFC to perform light work except that she can occasionally climb, balance, stoop, kneel, crouch, crawl, and reach overhead.  AR 35.   Next, the ALJ determined that Plaintiff could perform her past work as a preschool teacher and teacher's aide. AR 40.

On appeal, Plaintiff argues that the ALJ erred in calculating her RFC.  Specifically, Plaintiff contends the ALJ improperly rejected the opinions of Dr. Schorr (AR 688), as well as the opinions of nurse practitioners Stoner (AR 301-03) and Pflueger (AR 647).  Plaintiff also argues that the ALJ gave insufficient reasons for rejecting Plaintiff's subjective claims.

### IV.   Scope of Review

Congress has provided a limited scope of judicial review of a decision to deny benefits under the Act. This Court may review only whether the decision applied the proper legal standards and made findings supported by substantial evidence. *Bray v. Comm'r*, 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. Where the record as a whole can support either a grant or denial, the Court may not substitute its judgment. *Id*.

**V.**     **Discussion**

    **A.**     **The ALJ Gave Sufficient Reasons to Reject the Opinion of Dr. Schorr**

Plaintiff asserts that the ALJ gave insufficient reasons to reject Dr. Schorr's opinion. At Plaintiff's request, Dr. Schorr filled out a one-page questionnaire in May 2010. AR 688. He indicated that Plaintiff could not lift or bend; could sit for thirty minutes and stand and/or walk for twenty minutes at a time; and needed to lie down and elevate her legs. She was not limited to sedentary work, and could occasionally lift twenty pounds and frequently lift ten pounds. The ALJ gave Dr. Schorr's opinion "some weight … to the extent that it is consistent with the record as a whole" and found Plaintiff could do light work with occasional postural and reaching limitations.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)); *Orn v. Astrue*, 495 f. 3d 625, 633 (9th Cir. 2007).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes  v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).  Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).   Possible reasons to reject a treating

physician's opinion may include (1) the examining relationship; (2) the treatment relationship, including (a) the length of the treatment relationship or frequency of examination and the (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict a medical opinion. 20 C.F.R. § 404.1527(d). As to supportability, a medical opinion may be disregarded to the extent it is premised on discredited complaints. *Morgan v. Comm. of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999).

Although treating physician opinion are entitled to deference, it is an error to give an opinion controlling weight simply because it is the opinion of a treating source, if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record. SSR 96-2p. Here, the ALJ gave greater weight to Dr. Hernandez and Dr. Bobba's opinions because they were more consistent with the record as a whole. AR 39.  In particular, Dr. Hernandez described no significant limitation as to sitting, standing, or walking, and barred Plaintiff from "repetitive" stooping.  AR 438.  State agency physician Dr. Bobba reached the same opinion with a limitation of "occasional" stooping.  AR 443. The ALJ's reliance on the consultative examiner Dr. Hernandez's opinion constitutes substantial evidence supporting the ALJ's RFC determination. *Tonapetyan v. Halter*, 242 F.3d 1144,1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence, because it rests on independent examination).  In addition, the ALJ properly relied upon the fact that Dr. Bobba's opinion was consistent with the longitudinal medical evidence. *See Thomas v, Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); *see also* 20 C.F.R. § 404.1527(d)(3) (varying the weight given to non-examining source opinions "depend[ing] on the degree to which they provide supporting explanations for their opinions").  Finally, the ALJ did not completely reject Dr. Schorr's report, but did adopt parts that were consistent with record.

In reaching this conclusion, the ALJ examined and outlined the medical evidence in great detail. AR 36-40.  The ALJ's decision specifically referenced Plaintiff's x-ray and MRI findings regarding her back and neck. AR 36-37. In particular, the ALJ noted that images showed diffuse narrowing of the L5-S1 disk space, which was described as moderately severe in March 2007 and moderate in August 2008; but, a November 2008 MRI showed only mild bulging at that level and no involvement of the nerves. AR 36-37, 265, 592, 625. Otherwise, the imaging reports were normal or showed only mild degenerative changes of the spine. AR 36-37, 264, 275, 513, 629. Further, the condition of Plaintiff's spine did not evidence functional impairment. AR 36. In May 2008, Dr. Hernandez observed that Plaintiff had a normal gait and did not use an assistive device. AR 436. She complained of tenderness to palpitation in her neck and back and showed decreased range of motion, but she had sufficient muscle tone and normal strength, coordination, and gait. AR 37, 436-37, 581. In November 2008, a physician observed that she had normal gait, station, range of motion, strength, tone, and stability. AR 598-99.

Likewise, the ALJ's decision was consistent with clinical findings regarding Plaintiff's abdominal pain. The ALJ recognized her history of treatment for abdominal pain, but also noted that Plaintiff received a colitis diagnosis in February 2008 and her symptoms improved with Prednisone. AR 38, 505-06. An abdominal ultrasound, x-ray and CT were normal. AR 37-38, 513-14, 518, 520-21, 526. Her abdomen was repeatedly soft and non-tender on exam. AR 38, 436, 483, 581, 598. Despite her weight loss, multiple physicians observed that she consistently appeared well nourished and had sufficient muscle tone and normal motor strength. AR 37-38, 436-37, 483, 598-99, 646. Thus, the ALJ's decision to favor the limitations described by Drs. Hernandez and Bobba over those described by Dr. Schorr are consistent and supported by the medical record.  20 C.F.R. § 404.1527(d).  *Batson v. CSS*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit physician's opinions that are conclusory, brief, and unsupported by the record as a whole).

Moreover, although Plaintiff argues that the ALJ did not give adequate reasons to reject Dr. Schorr's opinion, it is clear that the ALJ rejected those portions of the doctor's report that were inconsistent with the other physicians' conclusions.  After noting the other doctors' opinions would

be given substantial weight because they are consistent with the record as a whole, the ALJ stated as follows:

> Some weight is given to the opinion of claimant's primary care physician, Dr. Michael Schorr, to the extent it is consistent with the record as a whole.  Dr. Schorr opined that the claimant can sit for 30 minutes at a time over an 8 hour work period, stand and/or walk 20 minutes at a time over an 8 hour work period but cannot lift or bend over.
>
> *However,* Dr. Schorr also opined that claimant's medical problems do not preclude her form performing any full time work at any exertional level, including the sedentary level, do not restrict her from doing more than sedentary work, and do not preclude her form performing occasional lifting of 20 pounds and frequent lifting of 10 pounds during an 8 hour workday.
> AR 39-40 (emphasis added).

Here, the ALJ noted an inconsistency in Dr. Schorr's report and accepted those portions that were consistent with the objective medical record, as well as those limitations identified in Drs. Hernandez's and Bobba's reports. Thus, the ALJ's reasoning is specific and legitimate and appropriately rejected those portions of Dr. Schorr's opinion that were not supported by the record.

Furthermore, it is not necessary for the ALJ to repeat the magical incantation, "I reject _____'s opinion because ..." *See Magallanes v. Bowen*, 881 F. 2d 747, 755 (9th Cir. 1989).  A reviewing court may draw specific and legitimate inferences from discussions of the evidence, particularity where conflicting evidence is detailed and interpreted, and findings are made, in order to assess why a statement or opinion has been rejected or accepted.  *Id.*  Such a review is possible in this case.  For example, the ALJ noted that Plaintiff received conservative treatment for her neck and back pain and the condition was managed by medications. AR 37, 299, 309-12, 316-21, 342-58, 362-65, 528-51, 658-63, 667-75. She was not referred to a spine specialist for treatment of her neck and back pain, nor did she require more aggressive treatment such as injections. AR 37. She received chiropractic care, but stopped treatments in 2006. AR 36, 414-33.

Similarly, Plaintiff's abdominal pain responded well to Prednisone and no complications were indicated. AR 38, 505-06.  Her acid reflux was treated entirely with medications. AR 309-12, 344-45, 351. As the ALJ recognized, conservative treatment is inconsistent with the type of restrictive limitations that Dr. Schorr assessed. AR 37. *See Warre v. Comm'r*, 439 F.3d 1001, 1006

14

(9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Rollins v Massanari*, 261 F.3d at 856 (treatment notes reflecting "no acute distress" and conservative treatment are "not the sort of … recommendations that one would expect to accompany a finding [of disability] under the Act"); 20 C.F.R. § 404.1529(c)(3)(iv) (ALJ may consider effectiveness of medication when considering severity and limiting effects of an impairment).

Finally, the Court finds Plaintiff's arguments that the ALJ misinterpreted Dr. Schorr's responses to the questionnaire unpersuasive.   Plaintiff argues that Dr. Schorr limited Plaintiff to sedentary work and noted specific limitations such as her need to lie down, her inability to bend or stoop, with frequent breaks from sitting.  Plaintiff argues that the ALJ was required to ask the VE about compliance with SSR 96-9p since a preclusion on stooping normally results in a disability finding.  (Doc. 15, pgs. 3-4).[5]  However, Dr. Schorr specifically stated Plaintiff was not precluded from working at any exertional level.  AR 688.  As Defendant correctly notes, the ALJ found Plaintiff could occasionally stoop and limited to her to light work.  SSR 96-9p concerns sedentary work and is not applicable given the ALJ's light work determination. 1996 WL 374185.  Further, Plaintiff's past work as a teacher's aide (DOT 249.367-014, 1991 WL 672325) does not require any stooping, and her past work as a preschool teacher (DOT 092.227-018, 1991 WL 646897) only requires occasional stooping which is consistent with the ALJ's RFC and renders Plaintiff's arguments moot.

In sum, the ALJ set forth valid reasons not to fully credit Dr. Schorr's opinion regarding Plaintiff's physical limitations, and the ALJ's decision to credit Drs. Hernandez and Bobba is supported by substantial evidence. *See Thomas v. barnhart* , 278 F.3d at 957.

**B.**     **The ALJ Gave Sufficient Reasons to Reject the Nurse Practitioners' Opinions**

Plaintiff also asserts that the ALJ gave insufficient reasons to reject the opinions of Nurse Practitioners Stoner and Pflueger. Nurse Stoner completed a questionnaire for the California welfare program in January 2008 containing the limitations set forth in the hypothetical to the vocational

---

[5]  The Court notes that Plaintiff incorrectly cites *Lauer v. Apfel*, 169 F. 3d 489 (7th Cir. 1999) as a Ninth Circuit case which further undermines her argument.

expert. AR 301-303. Similarly, in December 2009 Nurse Pflueger reported on a welfare questionnaire that Plaintiff had chronic abdominal pain, chronic back pain, and fatigue; could not "lift or stand for any length of time;" and could not work. AR 647. The ALJ gave "little weight" to these opinions. AR 40.

A nurse is a treating medical source, but only an "other source" and not an "acceptable medical source" as defined in the regulations. SSR 06-3p; 20 C.F.R. §§ 404.1527(c); 404.1513 and 416.913. Although such an opinion can under some circumstances even outweigh a treating source, the fact that it is not from an "acceptable medical source" is itself a factor that may justify giving it less weight than an opinion from an "acceptable medical source." *Id.* In discounting testimony from an "other source," the ALJ need only give germane reasons for doing so. *Id*; *Molina v. Astrue*, 674 F.3d 1104,1111 (9th Cir. 2012).

The ALJ gave adequate reasons for rejecting these opinions. The ALJ noted that both nurses were not accepted medical sources. The ALJ also noted that their opinions were inconsistent with the record as a whole, including the opinions of Drs. Hernandez and Bobba, the objective medical evidence, and Plaintiff's conservative course of treatment. The ALJ properly rejected their opinions on the ultimate question of disability, as these are not binding on the ALJ but are reserved to the ALJ by regulation.

Plaintiff cites *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) for the proposition that "[t]o the extent [a] nurse practitioner … was working closely with, and under the supervision of, [a doctor, the nurse's] opinion is to be considered that of an 'acceptable medical source.'" In fact, the status of this doctrine today is uncertain. Its origin is *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.1996), and this case relies on 20 C.F.R. § 416.913(a)(6), a regulation which was repealed in 2000 as "redundant and somewhat misleading." 65 Fed. Reg. 34950-01, 34952 (July 3, 2000). In 2012—one year after *Taylor*—the Ninth Circuit declined to pass on the "continued vitality" of this doctrine in a case where the source "acted alone." *Molina v. Astrue*, 674 F.3d at 1111 n.3.

As in *Molina*, the Court need not pass on the vitality of this doctrine, because in this case the sources "acted alone." Most district courts have interpreted the revision to § 416.913 to underscore

the narrow scope of the exception created by the Ninth Circuit in *Gomez. See Mack v. Astrue*, 12-CV-01221 NC, 2013 WL 163535 (N.D. Cal. Jan. 15, 2013) (citing cases). Plaintiff does not cite any evidence demonstrating that Nurses Stoner and Pflueger were closely supervised by, or acted as agents for, a treating physician. To the contrary, Plaintiff repeatedly indicated that Nurse Stoner solely managed her care. AR 69, 184 (Disability Report stating that Nurse Stoner "is my primary care specialist" who "is treating me for all" issues related to pain, blood pressure, infections, and depression), AR 187-88 (Nurse Stoner managed all medical tests), AR 201 (pain questionnaire indicating medication was prescribed by Nurse Stoner), AR 249-50 (same). As such, the nurses were not acceptable medical sources, nor may their opinions be equated to that of a treating physician. *Gomez v. Chater*, 74 F.3d at 971 (stating that "a nurse practitioner working on his or her own does not" constitute an acceptable medical source).

In conclusion, the ALJ appropriately treated the nurses' opinions as "other sources" under 20 C.F.R. § 404.1513(d)(1) and provided sufficient reasons for discounting them.

### C.    The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony

Plaintiff alleges the ALJ 's credibility analysis was improper because the ALJ only relied upon a lack of objective evidence as a basis to reject Plaintiff's testimony.  Defendant contends that the ALJ identified several deficiencies in Plaintiff's testimony and the credibility analysis is supported by substantial evidence.

A two step analysis applies at the administrative level when considering a claimant's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id.* at 1281-1282.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing

17

reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638.

### 2. *Analysis*

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, ALJ Rogers found that Plaintiff suffered from the severe impairments of degenerative disc disease, colitis, and irritable bowel syndrome. AR 33. Additionally, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent

they are inconsistent with the above residual functional capacity assessment." AR 36.  This finding satisfied step one of the credibility analysis.  *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony.  *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of those symptoms solely because they are unsupported by medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

Contrary to Plaintiff's argument, the ALJ did not discredit Plaintiff by finding simply that the objective medical evidence contradicted her symptoms. Instead, the ALJ articulated several reasons including the objective medical evidence, her conservative treatment, and her inconsistent statements as a basis to reject the testimony. AR 36-39. In so doing, the ALJ offered sufficiently specific reasons, supported by substantial evidence, to find that Plaintiff's complaints were not fully credible.

At the outset, the medical opinion evidence supported the ALJ's finding that Plaintiff's subjective complaints were not entirely credible. AR 39. Dr. Hernandez opined that Plaintiff could stand/walk and sit for six hours each in an eight hour day, could lift/carry twenty pounds occasionally and ten pounds frequently, and should not stoop repetitively. AR 39, 438.  Dr. Bobba gave the same exertional limitations and opined that she should only occasionally climb, balance, stoop, kneel, crouch, or crawl. AR 39, 442-43.  The  ALJ properly considered this opinion evidence, which showed that Plaintiff was not as limited as she claimed. AR 39. *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (ALJ may consider doctor's belief that claimant can work);

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of examining doctor serves "as substantial evidence supporting the ALJ's findings [regarding] physical impairment").  As previously explained, the ALJ relied on objective medical evidence from the record in support of this conclusion. [6]

Second, after considering the medical evidence of record, the ALJ noted that Plaintiff was "not … referred to any spine specialists and [was] only treated by her primary care providers."  AR 36.  Additionally, the ALJ noted that Plaintiff's treatment with medications for abdominal pain, hypertension, and diabetes did not cause any complications.  AR 38.  Conservative course of treatment is a proper basis to reject Plaintiff's subjective complaints.  *See* 20 C.F.R. § 404.1529(c)(3)(v) (an ALJ may consider the conservative nature of claimant's treatment); SSR 96-7p (an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").  Here, Plaintiff's spinal pain was treated with

---

[6]  For example, Plaintiff sought treatment for back, neck, and abdominal pain, but there was no evidence of corresponding functional impairment. AR 36-38, 436-37 (Dr. Hernandez observing that Plaintiff had normal coordination, motor strength, and gait; did not use an assistive device; and had sufficient muscle tone), AR 483 (allergist and immunologist Dr. Bensch observing that Plaintiff was well nourished, well developed, and in no distress), AR 581 (gastroenterologist observing that Plaintiff was in no apparent distress and did not have any gross sensory or motor deficits), AR 598-99 (physician observing Plaintiff was in no acute distress and had normal gait, station, range of motion, strength, tone, and stability), AR 646 (sleep disorder clinic evaluation observing that Plaintiff had normal appearance, nutrition, and development).

In addition, imaging studies revealed generally normal results with respect to Plaintiff's abdominal pain; there were some degenerative spinal changes but no involvement of the nerves. AR 275 (cervical spine x-ray showed narrowing at the C6-7 level without nerve compression), AR 264 (very slight thoracic scoliosis), AR 265 (mild degenerative changes at the L3-4 and L4-5 levels and moderately severe degenerative changes at the L5-S1 level), AR 513 (degenerative changes at L5-S1 level), 510 (scoliosis in thoracic spine and moderate disc disease at L5-S1 level),AR  625 (MRI showed good alignment overall, very minimal degenerative changes of the lower lumbar spine, mild degenerative changes at L3-4 and L5-S1 levels, and moderate bulging without nerve involvement at the L4-5 level), AR 629 (MRI showed good alignment and minimal narrowing at C6- 7 level), AR 559 (normal chest x-ray), AR 266-267 (normal abdominal x-ray and ultrasound), AR 518 (normal abdominal ultrasound), AR 520 (normal pelvic ultrasound except small uterine fibroid), AR521 (normal chest x-ray); ar 513-513 (abdominal and pelvis CTs did not show obstruction), AR 511 (chest x-ray showed stable COPD), 687 (normal chest CT). These objective clinical findings supported the ALJ's credibility determination.

medication and not injections or surgery. AR 36-37, 299, 309-12, 316-21, 342-58, 362-65, 528-51, 658-63, 667-75. *See Burch v. Barnhart*, 400 F.3d 676, 681(9th Cir. 2005) (finding that the claimant's pain was not severe enough to motivate her to injections or surgery is "powerful evidence" regarding the extent of pain); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations).  In addition, Plaintiff's GI symptoms were managed with medication. AR 37-38, 309-12, 349-45, 351, 505-06. 20 C.F.R. § 404.1529(c)(3)(iv) (ALJ may consider the effectiveness of medication in evaluating credibility).   Thus,  the ALJ correctly evaluated Plaintiff's treatment.

Third, the ALJ permissibly discounted Plaintiff's credibility based on Plaintiff's inconsistent statements regarding her smoking history. AR 38. In a January 2009 evaluation by a sleep clinic, Plaintiff stated that she did not smoke. AR 38, 645; 598.  However, Plaintiff reported elsewhere that she had a long smoking history and smoked during the same time period. AR 38, 280-83, 286-88, 292-95, 314-16, 320-21, 415, 482 (smoked 30 years up to 2 packs per day and half-pack per day in May 2008), 528-47, 549-51, 559, 586, 600, 648-57, 659-75 (reported smoking in January 2009).

Finally, the ALJ noted that Plaintiff's activities of daily living undermined her subjective complaints.  It is well established that an ALJ can look to daily living activities as part of the credibility analysis. *Burch v. Barnhart*, 400 F.3d at 680.  However, the ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn v. Astrue*, 495 F.3d at 639.

Here, Plaintiff argues that the ALJ did not properly evaluate her activities of daily living. The Court need not reach this issue because even assuming the ALJ erred on this basis, other clear and convincing reasons were provided for properly discounting Plaintiff's credibility.  *See e.g.,*

*Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).  Under these circumstances, the ALJ's credibility determination is supported by substantial evidence and the Court will "not engage in second guessing."  *Thomas v. Barnhart*, 278 F. 3d  at 959. Accordingly, the ALJ's findings are free of legal error and will not be disturbed.

**VI.**     **Conclusion**

A review of applicable law and facts indicates that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the undersigned recommends that the District Court affirm the Commissioner's determination.

These Findings and Recommendations will be submitted to the Honorable Anthony W. Ishii, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1). On or before **thirty (30) days** from the entry of this decision, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that, by failing to file objections within the specified time, she may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 12, 2013**                          **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE